The **PEOPLE** of the State of Colorado, Plaintiff–Appellant,

v.

Tommy Lee **HORN,** Defendant–Appellee.

No. 89SA202.

Supreme Court of Colorado, En Banc.

April 23, 1990.

was in custody when the statement was made and questioning had not been preceded by a *Miranda*[1] advisement. We affirm.

## I

The defendant is charged with aggravated incest.[2] The alleged victim and his two brothers made statements, which were substantially consistent, to social service workers and others implicating the defendant, their natural father. The victim also kept a diary which discussed the alleged molestations. The defendant was also implicated by Ivan Townsrow who had, for a brief period, lived with the defendant and the three children. Townsrow confessed to sexually assaulting the children and accused the defendant of doing the same.

As a result of these allegations, the defendant was interviewed by David Galyardt of the Greeley Police Department on January 27, 1988, and on August 17, 1988. On both occasions, the defendant came to the police station at the request of Galyardt, and was not placed under arrest on either occasion. Immediately prior to the January 27th interview, the defendant was advised of his *Miranda* rights and executed a written waiver of these rights. On August 17, however, the defendant spoke to Galyardt without any *Miranda* advisement.

The trial court denied the defendant's motion to suppress the January 27th statement, holding that it was voluntarily given after a proper *Miranda* advisement. As to the August 17th statement, the court found that Galyardt inadvertently failed to advise the defendant of his *Miranda* rights. The court also concluded that the defendant was effectively "in custody" shortly after his arrival at the police station. Therefore, it ordered the August 17th statement suppressed.

A.M. Dominguez, Jr., Dist. Atty., and Rebecca Brunswig, Deputy Dist. Atty., Greeley, for plaintiff-appellant.

David F. Vela, State Public Defender, and Carol Haller, Deputy State Public Defender, Greeley, for defendant-appellee.

Justice ROVIRA delivered the Opinion of the Court.

In this interlocutory appeal, pursuant to C.A.R. 4.1, the People challenge the district court's order suppressing a statement made by the defendant, Tommy Lee Horn. The district court ruled that the defendant

## II

The defendant must have been both in custody and subject to interrogation for the *Miranda* requirements to be applicable. *See, e.g., People v. Algien,* 180 Colo. 1, 501

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. § 18–6–302, 8B C.R.S. (1986).

P.2d 468 (1972). Here, the officer's conduct was admittedly inquisitive.[3] The question thus becomes whether the defendant was in custody at the time of the interview.

 Custody is not limited to those situations involving a formal arrest. Instead, the test for determining whether a person is in custody is an objective one, which considers whether a reasonable person in the suspect's position would believe that he is deprived of his freedom of action in any significant way. *People v. Viduya,* 703 P.2d 1281 (Colo.1985). The initial voluntariness of a person's presence does not preclude the determination that his presence thereafter is custodial in nature. *People v. Algien,* 180 Colo. 1, 501 P.2d 468 (1972). Conversely, the fact that an interview takes place at a police station or that the environment is perceived to be "coercive" is not determinative of the custody issue. For example, in *Oregon v. Mathiason,* 429 U.S. 492, 495, 97 S.Ct. 711, 714, 50 L.Ed.2d 714 (1977), the Court noted that:

[A]ny interview of one suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime. But police officers are not required to administer *Miranda* warnings to everyone whom they question. Nor is the requirement of warnings to be imposed simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect.

To determine whether an individual is in custody, the court must look to the totality of the circumstances under which the questioning occurred, including:

The time, the place and purpose of the encounter; the persons present during the interrogation; the words spoken by the officer to the defendant; the officer's tone of voice and general demeanor; the length and mood of the interrogation; whether any limitation of movement or other form of restraint was placed on the defendant during the interrogation; the officer's response to any questions asked by the defendant; whether directions were given to the defendant during the interrogation; and the defendant's verbal or nonverbal response to such directions.

*Jones v. People,* 711 P.2d 1270, 1275–76 (Colo.1986) (citing *People v. Thiret,* 685 P.2d 193, 203 (Colo.1984)).

 The determination of whether an individual was "in custody" as a result of being deprived of his liberty in a significant way is a question of fact which must be expressly made by the trial court. *People v. Johnson,* 671 P.2d 958, 962 (Colo.1983). The court's findings of fact will not be reversed upon appeal when the findings are supported by competent evidence and the correct legal standard, which addresses the totality of the circumstances, is applied. *People v. Trujillo,* 784 P.2d 788 (Colo. 1990).

 Here, the trial court's findings of fact reflect that it considered the totality of the circumstances in reaching its conclusion. The People, however, argue that the trial court's conclusions are not supported by sufficient competent evidence. We disagree.

A transcript of the August 17th tape-recorded interview was placed into evidence at the suppression hearing. The transcript reveals that the defendant initially denied involvement in any sexual assaults. It further indicates that Galyardt accused the defendant of lying on at least five occasions and twice left the defendant alone in the interview room to "reconsider" his prior responses. During the course of the interview, the defendant was urged to take a polygraph exam and encouraged to confess for the "therapeutic" effect it would have on the victim, who was now in the juvenile justice system. Although the defendant was repeatedly told that he was

---

**3.** "Interrogation" refers to any actions which an officer "should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis,* 446 U.S. 291, 301,

100 S.Ct. 1682, 1689–90, 64 L.Ed.2d 297 (1980). This was admittedly the sole purpose of the interview.

free to leave and that he would not be arrested that day, he was also confronted with the evidence against him and informed that charges would be filed against him regardless of his interview responses.

In its detailed findings of fact, the trial court discussed the transcript of the interview, as well as the officer's testimony at the suppression hearing, and concluded that the interview was "accusative from the outset." It also noted that the interview was conducted in an 8 by 12 feet windowless room, located in a secured area of the basement of the police station, in which only the officer and the defendant were present. Further, the trial court found the length of the interview, which lasted approximately 30 minutes, to be of significance because of the highly confrontational nature of the encounter. In conclusion, the trial court found that the sole purpose of the questioning was to obtain a confession from the defendant.

Since the findings are supported by competent evidence and the trial court applied the correct legal standard to those findings, we will not overturn the court's suppression ruling.

Accordingly, the suppression ruling is affirmed.