## The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

## Lee Alan BECKSTROM, Defendant–Appellant.

### No. 90CA0786.

Colorado Court of Appeals, Div. II.

May 7, 1992.

As Modified on Denial of Rehearing June 11, 1992.*

Certiorari Denied Jan. 4, 1993.

---

* Smith, J., would Grant Petition of Plaintiff–Appellee.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Timothy R. Twining, Asst. Atty. Gen., Denver, for plaintiff-appellee.

G. Paul McCormick, P.C., G. Paul McCormick, Boulder, for defendant-appellant.

Opinion by Judge HUME.

Defendant, Lee Alan Beckstrom, appeals the judgment of conviction entered after he was found guilty in a bench trial of cultivation of marijuana, possession of marijuana, and possession of a schedule I controlled substance. We vacate the trial court's order denying suppression of statements and evidence and remand for reconsideration and further findings.

Based upon information contained in shipping records maintained by United Parcel Service (UPS) that were examined pursuant to an administrative subpoena, federal Drug Enforcement Administration (DEA) officers suspected that defendant had received hydroponic equipment, suitable for growing marijuana, from an Oregon garden supply store. Acting upon that suspicion, the DEA officers contacted defendant at a school where he was employed as a teacher to inquire as to his possession and use of hydroponic equipment.

During an interview at the school, which lasted approximately twenty minutes, defendant after initially claiming the equipment was being used to grow tomatoes, upon interrogation and confrontation, admitted that he did possess hydroponic equipment at his home which he was using to grow marijuana. Defendant also signed a consent form authorizing the search of his home and agreed to accompany the officers there to show them the marijuana plants and hydroponic equipment.

Defendant subsequently filed a pretrial motion to suppress both his statements and the evidence seized from his home. He now contends that the trial court erred in denying that motion. We agree, in part, with those contentions.

I.

Defendant initially contends that the DEA's use of UPS records of shipments made from the Oregon garden supply store to his home violated his constitutional rights guaranteed by the Fourth and Fourteenth Amendments. We reject that contention.

A.

We conclude that the trial court correctly determined that defendant had no personal or proprietary interest in the UPS shipping records and that he had no vicarious standing to assert Fourth Amendment rights

belonging to UPS. *See Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); *see also United States v. Miller,* 425 U.S. 435, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976).

### B.

The trial court also correctly concluded that defendant had no legitimate expectation of privacy in the information obtained by the DEA from UPS under the doctrine of *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). The information requested and obtained was limited to "accounts, account numbers, numbers of items shipped/received including addresses/shipping records for the month of July 1989" from named garden supply dealers.

In ordering goods and requesting shipment from Oregon to Colorado, defendant could not reasonably expect that his name, address, and the fact of shipment would remain private. Such information would be readily accessible to the supplier, the commercial shipping company, their respective employees, and any other persons who might come into contact with the parcels during the course of their delivery. Only information as to defendant's name and address, the supply company's name, the number and weights of packages shipped, and the dates of their shipment was revealed. The contents of the parcels was neither invaded by, nor revealed to, DEA. Once such information had been consensually and voluntarily made accessible to third parties by defendant, it could not subsequently be clothed with a legitimate expectation of privacy. *See Smith v. Maryland,* 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979).

### C.

Defendant also contends, for the first time on appeal, that the DEA's action in subpoenaing the UPS records is violative of Colo. Const. art. II, § 7. We disagree.

While we recognize that our supreme court has held that Colo. Const. art. II, § 7, provides a broader scope of constitutionally protected privacy than that afforded by the Fourth Amendment, it has done so only in carefully circumscribed areas in which contemporary society reasonably has a higher expectation of privacy. *See People v. Lamb,* 732 P.2d 1216 (Colo.1987) (bank records); *People v. Corr,* 682 P.2d 20 (Colo. 1984) (telephone toll records); *People v. Sporleder,* 666 P.2d 135 (Colo.1983) (pen register information as to telephone numbers dialed).

The shipping information divulged here is not of the same personal, private, or confidential character as bank records or records of telephonic contacts. As we noted above, most of the information obtained was readily accessible to any member of the public who might come into contact with the packages during commercial transit.

Nor is this a case involving surreptitious governmental intrusion tantamount to a "surrogate presence" in contravention of a reasonable expectation of privacy in the possession or use of personal private property. *See People v. Oates,* 698 P.2d 811 (Colo.1985) (government beeper in barrel of purchased goods).

Hence, we conclude that defendant's claim based on the heightened standard under Colo. Const. art. II, § 7, is without merit.

### II.

Defendant next contends that the trial court erred in characterizing the contact at the school as a consensual interview, rather than as an investigatory stop or a seizure of his person. We are unable to determine by examining the record whether the trial court applied the correct standard in so characterizing the contact. Accordingly, we remand for reconsideration of the issue pursuant to the correct standard and for appropriate findings pursuant to that standard.

Courts have recognized three types of police-citizen encounters involving police interrogation: (1) arrests, which must be based upon probable cause; (2) investigatory stops or limited detentions, which may be based upon a reasonable articulable suspicion that the person stopped or detained

is involved in criminal activity; and (3) consensual interviews which need not be supported either by probable cause or reasonable suspicion. *See People v. Trujillo,* 773 P.2d 1086 (Colo.1989); *see also United States v. Mendenhall,* 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980); *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

A consensual interview is one in which no restraint of the liberty of the citizen is implicated, but the voluntary cooperation of the citizen is elicited through non-coercive questioning. *People v. Trujillo, supra.* The determination whether a restraint of a citizen's liberty is implicated must be made upon an objective standard. A person has been "seized" within the meaning of the Fourth Amendment if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed he was not free to leave. *United States v. Mendenhall, supra; see also People v. Trujillo supra* (applying objective test).

Here, the trial court did not articulate the standard it applied in determining that the DEA agents conducted a consensual interview at the school. Although the trial court found that the defendant had not been arrested or detained and was in fact free to leave the interview room, it is not clear that the court made those conclusions from the perspective of a reasonable person in the defendant's position at the time of the encounter.

Moreover, it is not clear whether the trial court's conclusion that the DEA agents' possession of "articulable facts to [warrant] contact [with] the defendant" is tantamount to a determination that the requisites for an investigatory stop had been met. It is also not clear what articulable historical facts the court relied upon to support that conclusion.

### III.

■ We also remand for application of the objective standard in determining whether warnings pursuant to *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) were required at the outset of the interview conducted at the school. *See People v. Horn,* 790 P.2d 816 (Colo.1990).

If a reasonable person in the defendant's position at the time of the encounter and under circumstances then existing would have considered himself deprived of his freedom of action in a significant way during the DEA agents' interrogation, then *Miranda* warnings were required in order to render defendant's statements admissible. *See People v. Horn, supra.*

Here, although the trial court found that defendant was not in fact in custody or deprived of his liberty, and while it did consider the totality of historical facts and circumstances, it is not clear that the correct objective standard was applied *from the perspective* of a reasonable person in *defendant's position.*

Defendant testified that he did not feel free to leave the interrogation room. The officers testified, and the court found, that defendant was in fact free to leave. However, nothing in the record indicates that the court considered whether a reasonable person in defendant's circumstances would have perceived that he was or was not free to leave the encounter.

Thus, we conclude that this issue must also be remanded for redetermination pursuant to the correct legal standard. Since the voluntariness of the defendant's consent to search may have been tainted by admissions derived from impermissible unadvised interrogation, that issue must also be reconsidered upon remand.

We have considered the remaining contentions advanced by defendant and deem them to be without merit.

The trial court's order denying defendant's motion to suppress is vacated and that matter is remanded for reconsideration consistent with the views expressed herein. If, after applying the correct standards, the trial court reaffirms its denial of the suppression motion, the judgment of conviction is affirmed subject to further appeal of that redetermination. If the trial court concludes that the suppression mo-

tion should be granted, the judgment is reversed, and a new trial is ordered.

NEY, J., concurs.
SMITH, J., dissents.

Judge SMITH dissents.

I respectfully dissent. Here, the trial court expressly found from the evidence that the defendant was free at all times to leave the interview room and concluded that facts were not present to demonstrate that he had been arrested or detained. In my view, this was sufficient.

We must, I believe, presume that the court applied the proper standard. I know of no requirement that the court explain the mental processes it utilized or the weight it gave to various evidentiary facts in arriving at its findings. Nor do I know of any authority for the proposition that the court must specifically cite the legal authorities which it applied to those facts in reaching its legal conclusions.

Further, I am disturbed by the practice of delegating to the trial court the responsibility of reviewing its own prior rulings in determining whether its judgment should be affirmed or reversed. I would affirm.