The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Charlie Cotto APONTE, Defendant– Appellant.

No. 91CA1663.

Colorado Court of Appeals, Div. IV.

Dec. 16, 1993.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Wendy J. Ritz, Asst. Atty. Gen., Denver, for plaintiff-appellee.

Law Office of Sheila M. Davis, P.C., Sheila M. Davis, Denver, for defendant-appellant.

Opinion by Judge REED.

Defendant, Charlie Cotto Aponte, appeals from the judgment of conviction entered upon a jury verdict finding him guilty of distribution of a controlled substance by its importation into the state in violation of the special offender statute. We affirm.

Defendant's convictions arose from an undercover drug operation conducted by the Jefferson County and federal Drug Enforcement Administration (DEA) narcotics investigation teams.

In November 1990, a police informant, who was being detained in Colorado on unrelated charges, met with DEA agents and offered to arrange a drug purchase in exchange for a reduction in the charges pending against him. The agents agreed, and the informant contacted defendant. in California by telephone to arrange a purchase from him. Subsequently, the informant was released from jail and traveled to California with DEA agents to meet with defendant and to negotiate the deal.

On January 14, 1991, the informant, defendant, and two companions flew from California to Colorado. One of defendant's companions brought with him a suitcase containing three kilograms of cocaine. Undercover DEA agents met them at the airport at Denver and transported them and the suitcase to a nearby hotel where the sale was transacted. At the hotel, the agents surreptitiously made a videotape of defendant and his companions during their sale to the agents of the cocaine taken from the suitcase. Thereafter, drug charges were filed against defendant and his companions.

Prior to trial, defendant filed a motion to sever his trial from that of his co-defendants with whom he was jointly charged. The trial court denied the motion, and at trial, all three were found guilty.

## I.

Defendant first asserts that the trial court erred in denying his motion to dismiss, which was based on the contention that his due process rights were violated by outrageous governmental conduct. Specifically, defendant complains that the police informant called him 20 to 30 times urging the transaction, visited him in California, and gave him gifts. Thus, he argues that any disposition to drug distribution activity by him was induced by government "badgering." Further, defendant contends that, as part of its outrageous conduct, the government created a scheme to import drugs into Colorado and that he had no predisposition to engage in such activity. We perceive no error.

Colorado has recognized the due process claim of outrageous governmental conduct. *Bailey v. People*, 630 P.2d 1062 (Colo. 1981). Such conduct, which justifies the exercise of the courts' supervisory powers in dismissing a criminal case, is generally defined as that which violates fundamental fairness and is shocking to the universal sense of justice. *See People v. Auld;* 815 P.2d 956 (Colo.App.1991).

Whether the circumstances presented would bar prosecution under principles of due process is for the court, to be determined by it upon the totality of facts in a given case.

*People in Interest of M.N.*, 761 P.2d 1124 (Colo.1988).

■ Here, the record demonstrates that the undercover agents did not coerce defendant to engage in activity he was not otherwise predisposed to undertake. Rather, it discloses that the agents merely gave defendant the opportunity to conduct a cocaine sale, and he voluntarily did so. Specifically, when the informant first called defendant and stated that he "had a buyer" in Denver who "would like to do some business," defendant responded, "No problem." And, defendant voluntarily continued to arrange the transaction, explaining delays therein by his difficulty in obtaining a supplier.

While the informant encouraged defendant to import cocaine into the state, we conclude that this behavior did not amount to outrageous conduct. Rather, the record shows that defendant, with knowledge of the interstate nature of the sale, voluntarily searched for an individual who was able to supply and deliver the cocaine into this state; that he accompanied the contraband in its transportation here; and that he participated in its sale in Colorado.

We conclude that, under these circumstances, including the informant's actions in making gifts to the defendant and in encouraging the transaction by calls and visits, no governmental outrageous conduct was demonstrated, and thus, the trial court correctly denied the motion to dismiss. *See People in Interest of M.N., supra* (government officers can employ appropriate artifices and deception to expose illegal activities); *Bailey v. People, supra.*

## II.

Defendant also argues that the action of the government agents "rises to the level of enticing a sentence factor manipulation." Because defendant did not raise this argument before the trial court, however, we conclude that he is precluded from raising it for the first time on appeal. *People v. Snook*, 745 P.2d 647 (Colo.1987).

## III.

Defendant further contends that he was denied a fair trial because the trial court improperly restricted his right to confront a witness. Defendant asserts that he was improperly precluded from cross-examining a DEA agent about that organization's policy of rewarding and promoting agents based on the quantity of cocaine they successfully import into Colorado. According to defendant, this evidence was relevant to the agent's bias, prejudice, and motive for entrapping defendant and inducing the importation of drugs into this state. We perceive no error.

■ A trial court is vested with broad discretion in determining whether evidence is relevant, and, absent an abuse of discretion, its evidentiary ruling will be affirmed. *People v. Ibarra*, 849 P.2d 33 (Colo.1993). To show an abuse of discretion, a defendant must establish that the trial court's decision to exclude the evidence was manifestly arbitrary, unreasonable, or unfair. *King v. People*, 785 P.2d 596 (Colo.1990).

■ ▪Here, we conclude that the trial court did not abuse its discretion in precluding evidence of the DEA's system of rewards and promotions.

Colorado's entrapment statute creates a subjective test, not an objective one. As such, it focuses on the defendant's state of mind and, therefore, does not set general standards for police conduct. *Evans v. People*, 706 P.2d 795 (Colo.1985); § 18–1–709, C.R.S. (1986 Repl.Vol. 8B). Under these circumstances, evidence of the DEA's internal reward system is irrelevant to whether defendant was entrapped into committing the charged offense. *See People v. Vega*, —— P.2d —— (Colo.App. No. 91CA1664, September 9, 1993).

■ Moreover, this evidence is irrelevant to the issue of importation. The special offender statute does not create a substantive crime. *Felts v. Las Animas County Court*, 725 P.2d 61 (Colo.App.1986). Rather, that statute does no more than set a penalty range for certain drug offenses committed under special circumstances. And, it contains no procedure requiring the jury to

make a determination regarding mitigating factors. *See People v. Vega, supra.*

Thus, we determine that the trial court did not abuse its discretion in excluding this evidence.

## IV.

■ Next, defendant asserts that the trial court erred in disallowing the defense of entrapment to the charge of special offender status. We disagree.

In *People v. Vega, supra,* a panel of this court determined that this statute does not create a "substantive crime," but rather is a "presumptive penalty statute." The panel based its conclusion on the statute's plain language, which simply sets a "penalty range for particular crimes involving drug offenses committed under special circumstances." As such, the *Vega* panel determined that the assertion of an affirmative defense to a charge of violation of the special offender statute is inappropriate.

We agree with *People v. Vega, supra,* and find it dispositive of this issue.

## V.

Next, defendant contends that the trial court erred in denying his motion for severance. We disagree.

Prior to trial, defendant filed a motion for severance, arguing that his co-defendants made statements after their arrests which were prejudicial but not admissible as to him. The court denied the motion but redacted from each defendant's statement any reference to co-defendants. The court further ruled that it would read an admonitory instruction to the jury when admitting the statements in their redacted form.

### A.

■ Defendant contends that his motion to sever was improperly denied because he was only a "middleman" in the drug transaction; that his co-defendants were more sophisticated in their dealings; and that he spoke minimal English while one of his co-defendants spoke fluent Spanish and English; and that this prevented a fair trial.

We conclude that defendant is precluded from raising this argument for the first time here.

In his written motion for severance and during the hearing on that motion, defendant argued that a separate trial was warranted because his co-defendants made statements prejudicial to him which the prosecution would, in all likelihood, introduce at trial. At no time did defendant argue that his motion for severance should be granted for the reasons now attempted to be argued. We therefore conclude that defendant is precluded from raising these contentions for the first time on appeal. *See People v. Snook, supra.*

### B.

Further, defendant argues that his motion for severance was improperly denied because certain statements made by his co-defendants, which were admitted into evidence, were prejudicial to him.

Defendant, however, did not raise this argument in his opening brief, but rather raised the issue for the first time in his reply brief. Under these circumstances, therefore, the contention is not properly before us, and we will not address it. *People v. Czemerynski,* 786 P.2d 1100 (Colo.1990).

### C.

■ Defendant also contends that the trial court abused its discretion in denying his motion for severance made during trial. He argues that, because of the court's redaction, the statements of the co-defendants that were received in evidence excluded portions that were favorable to him. We reject this contention.

Here, the trial court redacted portions of the co-defendants' custodial statements which were prejudicial to any defendant other than the declarant. It also gave an admonitory instruction as to the limited use of the statements when received in evidence. It thus followed a procedure approved in *People v. Gonzales,* 198 Colo. 450, 601 P.2d 1366 (1979).

Defendant does not contend that the admitted statements inculpate him. Rather he

argues that the deleted portions are exculpatory as to him because they focus upon the actions of the co-defendants, or the informant, in the transaction. These portions, he argues, negate defendant's role as a source of the cocaine and support his defense of entrapment. Accordingly, he contends that he was entitled to a severance.

In denying the motion, the trial court ruled that rather than being exculpatory, the deleted portions, in their overall context, were inculpatory. Our examination of the statements causes us to agree, and we do not perceive how the court abused its discretion in following the procedure approved in *People v. Gonzales, supra.*

We further agree with the trial court that the custodial statements of co-defendants constitute hearsay as to this defendant. *Russell v. People,* 125 Colo. 290, 242 P.2d 610 (1952). We know of no rule which justifies the grant of a separate trial so that inculpatory hearsay statements of accomplices may be received. *Cf.* § 16–7–101 C.R.S. (1986 Repl.Vol. 8A); C.R.C.P. 14. Moreover, defendant does not contend that, because of the joinder, he was prevented from presenting any exculpatory evidence.

Thus, we perceive no abuse of discretion in the court's denial of the motion for severance made during trial.

## VI.

Last, relying upon *People v. Montoya,* 773 P.2d 623 (Colo.App.1989) and *People v. Talley,* 824 P.2d 65 (Colo.App.1991), defendant contends that the trial court erred in admitting into evidence, without "sufficient mandated precautions," a videotape and an accompanying transcript of the drug transaction. He contends that, as a result, the jury was permitted unsupervised use of the videotape and transcript during its deliberations. We perceive no reversible error.

Initially, we note that at trial, defendant failed to object to the video and transcript being viewed by the jury during its deliberations. Accordingly, we must consider this argument using a plain error standard. Crim.P. 52(b).

■ It is error for a trial court to allow the jury, during deliberations, "to engage in the unsupervised, and perhaps repetitive, viewing" of a videotape of a witness' statement that was introduced into evidence as an exhibit. *People v. Montoya, supra,* 773 P.2d at 626.

This rule is based on the premise that if testimony is available to jurors as an exhibit during their deliberations, they may give such testimony undue weight and may not accord adequate consideration to controverting testimony received from live witnesses. *People v. Montoya, supra.* Thus, videotaped "statements" of a witness are considered to be "testimonial in character," similar to depositions, to which the jurors should not have unsupervised access during deliberations. *People v. Talley, supra,* 824 P.2d at 67.

■ However, neither *Montoya* nor *Talley* is applicable here. The videotape and its transcription do not constitute statements of witnesses testimonial in character as a narrative of events. Rather, they are tangible exhibits with verbal content which are nontestimonial in character because they depict the actual commission of the crime itself. *See United States v. Koska,* 443 F.2d 1167 (2d Cir.1971) (jury in bribery case could properly take into its deliberations tape recording and accompanying transcript of conversation between defendant and agent in which the bribery was offered); *State v. Borden,* 455 N.W.2d 482 (Minn.App.1990) (there being no objection, it was proper for jury to take into deliberations videotape of wet t-shirt contest in which two minors illegally participated); *Chambers v. State,* 726 P.2d 1269 (Wyo.1986) (exhibits that are verbal in nature, such as recordings of criminal acts, are generally allowed to go into deliberations.); *see also People v. Coca,* 40 Colo.App. 440, 580 P.2d 1258 (1978) (audio-tape and transcript of drug purchase properly available to jury during deliberations).

Under these circumstances, therefore, we perceive no error in allowing the jury unsu-

pervised access to the videotape and transcript.

The judgment is affirmed.

RULAND and SMITH,* JJ., concur.