The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Daniel McKINNEY, Defendant–Appellant.

No. 01CA0041.

Colorado Court of Appeals,
Div. V.

Jan. 30, 2003.

As Modified on Denial of Rehearing
July 3, 2003.

Certiorari Granted Dec. 1, 2003.

Ken Salazar, Attorney General, Anthony J. Navarro, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Karen N. Taylor, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge TAUBMAN.

Defendant, Daniel McKinney, appeals the judgment of conviction entered upon jury verdicts finding him guilty of three counts of theft, three counts of theft from an at-risk adult, and conspiracy to commit theft. We affirm in part and reverse in part.

Between 1994 and 1996, defendant and his wife took money totaling $70,000 from three victims: $20,000 from W.P., $20,000 from D.P., and $30,000 from S.C. All three were his insurance clients.

The disputed issues at trial were whether defendant had obtained the money through deception and whether he intended permanently to deprive the victims of their money. Defendant characterized the money as loans he intended to repay, but had not repaid before trial.

. At trial, defendant's wife testified that she had been charged in connection with the thefts and pleaded guilty to conspiracy to commit theft. In the course of pleading guilty, she prepared a written statement that also implicated defendant in the thefts. She further testified that she pleaded guilty to "stay out of jail."

## I. Statute of Limitations

Defendant contends his convictions for theft from at-risk adults and conspiracy must be vacated because the offenses occurred more than three years before the information was filed and are not subject to the tolling provision in the applicable statute of limitations. We agree in part.

Where a defendant raises a question of law on appeal, the standard of review is de novo. *People v. Melillo*, 25 P.3d 769, 777 (Colo. 2001).

Appellate courts review interpretations of statutes de novo. "[A] court's primary task is to ascertain and give effect to the intent of the legislature." *People v. Robertson*, 56 P.3d 121, 123 (Colo.App.2002). To determine intent, courts give statutory terms their commonly accepted meaning. "When the language is unambiguous and the legislative intent reasonably clear, we need not resort to other rules of statutory construction." *People v. Triantos*, 55 P.3d 131, 134 (Colo.2002).

"When the [General Assembly] uses certain language in one part of a statute and different language in another part, a court should assume that different meanings are intended. Every word excluded from a statute must be presumed to have been excluded for a reason." *People v. Auman*, 2002 WL 31121380, 67 P.3d 741, 751 (Colo.App. No. 99CA0016, Sept. 26, 2002); *see also People v. J.J.H.*, 17 P.3d 159 (Colo.2001)(courts should not presume the General Assembly used language idly).

### A. Theft from At–Risk Adults

The statute concerning crimes against at-risk adults provides in pertinent part that "[a]ny person who commits theft, and commits any element or portion of the offense in the presence of the victim, *as such crime is described in section 18–4–401(1)*, and the victim is an at-risk adult ... commits ... a class 3 felony if the value of the thing involved is five hundred dollars or more." Section 18–6.5–103(5), C.R.S.2002 (emphasis added). It further provides that when the

theft occurs without the use of force, threats, or intimidation, the offense is a class 4 felony.

Generally, a prosecution for theft must be commenced within three years of the offense. *See* § 16–5–401(1)(a), C.R.S.2002. However, the statute of limitations provides in pertinent part that "[t]he period within which a prosecution must be commenced shall begin to run upon discovery of the criminal act ... for ... theft, pursuant to section 18–4–401." Section 16–5–401(4.5)(c), C.R.S.2002.

Here, defendant filed a pretrial motion to dismiss all of the charges as being beyond the three-year statute of limitations. By agreement of counsel, the trial court deferred ruling on the motion until the end of defendant's trial. At the conclusion of the prosecution's case, defense counsel renewed his motion to dismiss. The trial court concluded that the "date of discovery as to all of these matters was within the statute of limitation period" and denied the motion.

The discovery tolling provision applies to twenty-one enumerated offenses. While theft is included, theft from an at-risk adult is not. *See* § 16–5–401(4.5). In addition, although the crimes against at-risk adults statute refers to theft, it does not refer to the statute of limitations discovery tolling provision. *See* § 18–6.5–103(5).

Had the General Assembly intended to include theft from at-risk adults in the discovery tolling provision, it could easily have done so. The legislative history of the discovery tolling provision and theft from at-risk adults statute supports this conclusion. The discovery tolling provision in § 16–5–401 was enacted in 1991, Colo. Sess. Laws 1991, ch. 73 at 403, and was amended in 1992 and 1998 to include additional enumerated offenses. Colo. Sess. Laws 1992, ch. 73, at 400; Colo. Sess. Laws 1998, ch. 61 at 156. The entire statute of limitations was amended in 2001. Colo. Sess. Laws 2001, ch. 217 at 730.

The theft from at-risk adults statute, § 18–6.5–103, was enacted in 1991, Colo. Sess. Laws 1991, ch. 288 at 1779, and amended in 1993 and 1998. Colo. Sess. Laws.1993, ch. 292 at 1733; Colo. Sess. Laws 1998, ch. 314 at 1440.

Thus, the discovery tolling provision was amended on three occasions by the General Assembly after the enactment of the theft from at-risk adults statute. However, theft from at-risk adults was not explicitly included in the enumerated offenses to which the discovery tolling provision applies.

*People v. Klausner*, 2003 WL 124398, 74 P.3d 421 (Colo.App. No. 00CA2381, Jan. 16, 2003), upon which the People rely, does not dictate a different result. There, a division of this court held that the indeterminate sentencing scheme set forth in the Colorado Sex Offender Lifetime Supervision Act, § 18–1.3–1001, et seq., C.R.S.2002 (the Act) applies to the crime of first degree sexual assault on an at-risk adult. That crime was not specifically enumerated in the Act, but the Act also contained a broad definition of the term "sex offense."

Here, in contrast, the discovery tolling provision does not contain a similarly broad definition. Rather, it lists specific offenses to which it applies, including theft. However, as noted, the specific offense of theft from an at-risk adult is not enumerated in the discovery tolling provision.

We also reject the People's contention that § 18–6.5–103(5) is merely a penalty or sentence enhancer of theft, as defined in § 18–4–401(1), and that the discovery tolling provision therefore applies.

A statutory provision is a penalty or sentence enhancer if its proof, while raising the felony level of the offense, is not required to secure a conviction of the charged offense. *People v. Martinez*, 32 P.3d 520, 529 (Colo. App.2001).

Here, as noted, defendant was charged with committing three counts each of theft and theft against an at-risk adult. Thus, that the victims were at-risk adults *was* required to secure a conviction of the offense of theft from an at-risk adult. Consequently, § 18–6.5–103(5) cannot be viewed as a sentence enhancer, especially given that defendant was charged and convicted of both theft and theft from an at-risk adult for the same acts. *Cf. People v. Melillo*, *supra*, 25 P.3d at 771 (single count may charge both a crime and a sentence enhancer).

Thus, we conclude that the discovery tolling provision in the statute of limitations does not apply to theft from an at-risk adult. Accordingly, defendant's three convictions for theft from an at-risk adult must be reversed.

### B. Conspiracy

■ However, we conclude reversal of defendant's conspiracy conviction is not required on this basis.

■ The conspiracy and its underlying crime are separate and distinct offenses. *People v. Osborne*, 973 P.2d 666, 673 (Colo. App.1998). When a conspiracy terminates "depends upon the particular facts and purposes of such conspiracy" and not necessarily on the completion of the underlying offense. *People v. Burke*, 37 Colo.App. 289, 291, 549 P.2d 419, 421–22 (1976)(quoting *Cleaver v. United States*, 238 F.2d 766, 769 (10th Cir. 1956)).

Relevant to conspiracy, the statute of limitations provides in pertinent part that "When an offense ... is based on a series of acts performed at different times, the period of limitation prescribed by this code starts at the time when the last act in the series of acts is committed." Section 16–5–401(4), C.R.S.2002.

The conspiracy count was amended to relate to only S.C., and the information alleged the conspiracy occurred between January 1, 1994 and December 4, 1998. At trial, the evidence showed that the last act of defendant's conspiracy to commit theft occurred in March 1996 when defendant's wife withdrew the remainder of S.C.'s money from the checking account. The information was filed within three years of this event, and thus the prosecution for conspiracy was brought within the statute of limitations.

### II. Jury Instructions

■ Defendant contends the trial court erred by not instructing the jury it had to find that he committed the thefts within three years of their discovery. We disagree.

■ When no contemporaneous objection is made to an asserted error, appellate re-

view is limited to a plain error analysis. Plain error "casts serious doubt upon the basic fairness of the trial itself." *Wilson v. People*, 743 P.2d 415, 419–20 (Colo.1987).

■ "Where determination of jurisdiction depends upon a resolution of disputed facts, the issue must be submitted to the jury with an appropriate instruction, regardless of whether it was raised by the defendant. However, no plain error results from a failure to submit the issue to the jury if the uncontested facts overwhelmingly support jurisdiction." *People v. Cullen*, 695 P.2d 750, 751 (Colo.App.1984).

■ Further, it is not plain error for the trial court to make that determination where, as here, defendant requested it to do so. Initially, defendant filed a pretrial motion seeking dismissal of all the charges and requesting an evidentiary hearing. At the motions hearing, counsel and the trial court agreed to postpone the ruling until after the presentation of the evidence at trial.

Moreover, the three-year statute of limitations did not start running until the discovery of the thefts. *See* § 16–5–401(4.5)(c). The information was filed on December 4, 1998. Thus, the thefts must have been discovered not more than three years earlier.

We conclude that there was no plain error here because the uncontested facts overwhelmingly supported jurisdiction. *See People v. Cullen, supra.* S.C. testified that she discovered, around Christmas of 1996, that money was missing from the bank account she opened with defendant's wife. The evidence indicated that the discovery of the thefts from victims W.P. and D.P. occurred in 1996 at the earliest and in 1998 at the latest. D.P.'s daughter testified that she and her mother confronted defendant about the thefts in 1996 or 1997. The financial advisor for W.P. and D.P. testified that he learned that money was missing in October 1998. At trial, defendant did not present evidence to suggest earlier discovery dates for the thefts.

### III. Wife's Written Statement

■ Defendant next argues the trial court committed plain error when it allowed the jury to take his wife's inculpatory written

statement into the jury room during deliberations, thus depriving him of his right to a fair trial. We conclude there was no error, plain or otherwise.

Because counsel failed to object to the alleged error, our review is limited to plain error analysis. *See Wilson v. People, supra.* Here, defendant did not object when the statement was admitted into evidence or when the jury was allowed to take this exhibit into the jury room during deliberations, although the wife recanted her statement during testimony in defendant's case.

Initially, we also reject the People's assertion that the record does not clearly establish that the wife's written statement was actually taken by the jury into the jury room during deliberations. The record reflects that the jury had "all the admitted exhibits," including the statement, in its possession during deliberations.

Relying primarily on *People v. Montoya,* 773 P.2d 623 (Colo.App.1989) and *People v. Talley,* 824 P.2d 65 (Colo.App.1991), defendant argues that the trial court erred in allowing defendant's wife's written statement to be taken into the jury room.

However, for the reasons set forth below, we conclude that an amendment to C.R.C.P. 47(m), effective January 1, 1999, undercuts the rationale of *Montoya* and *Talley* and, under the amended rule, written statements that are trial exhibits may be taken into the jury room.

In *Montoya* and *Talley,* respectively, divisions of this court held that it was error to allow the jury unrestricted and unsupervised access to a videotape of an eyewitness's statement or to an audiotape of the victim's statement. Both *Montoya* and *Talley* were premised on the concern that giving the jury unlimited access would place undue weight or emphasis on that evidence. *See also People v. Page,* 907 P.2d 624, 636 (Colo.App.1995)(dicta: "an out-of-court statement by a witness in a criminal case normally may not be taken into the jury room during deliberations"); *People v. Miller,* 829 P.2d 443, 446 (Colo.App.1991)(same).

In *Montoya,* the division noted that while the Colorado Rules of Evidence set forth the criteria for the admissibility of evidence, neither those rules nor the Colorado Rules of Criminal Procedure address whether a trial exhibit, properly admitted as evidence, may be reviewed during jury deliberations. The division further noted that Crim. P. 57(b) provides that if a procedure is not specified in the Colorado Rules of Criminal Procedure, the court "shall look to the Rules of Civil Procedure" and proceed in any lawful manner not otherwise inconsistent with the governing rules. *People v. Montoya, supra,* 773 P.2d at 625.

Accordingly, the *Montoya* division relied on C.R.C.P. 47(m), which then provided in relevant part that jurors generally "may take [into the jury room] all papers, except ... depositions ..., which have been received in the case."

The *Montoya* panel acknowledged that C.R.C.P. 47(m) was not strictly applicable, but considered the analogous prohibition against jurors taking with them a deposition or a videotape. In both situations, the panel said, there would be a concern "about allowing a jury to engage in the unsupervised review of materials of a testimonial character." *People v. Montoya, supra,* 773 P.2d at 625.

When *Montoya* was decided, C.R.C.P. 47(m) provided an exception not only for depositions, but also for pleadings, accounts, and account books. Although the derivation of these exceptions is not clear, they may stem from the supreme court's opinion in *Wilson v. People,* 103 Colo. 150, 84 P.2d 463 (1938), which has been broadly interpreted as holding that all admitted exhibits may be used by the jury in its deliberations. *See People v. Coca,* 40 Colo.App. 440, 580 P.2d 1258 (1978); *see also People v. Melanson,* 937 P.2d 826, 840 (Colo.App.1996).

In *Wilson,* the supreme court rejected the English common law rule that only writings under seal could be taken into the jury room. Although the *Wilson* court did not decide whether a deposition could be brought into the jury room, it cited with approval an 1812 Pennsylvania case noting the practice of delivering to the jury all written papers except depositions taken under rule of court. Depo-

sitions were withheld because of the belief that jurors might give undue emphasis to them as compared to testimony of witnesses who had been examined in court. *See Alexander v. Jameson*, 5 Binn. 238 (Pa.1812).

Nevertheless, this historical concern about allowing depositions into the jury room during deliberations was eliminated when C.R.C.P. 47(m) was changed as part of the Colorado Supreme Court's jury reform project. *See Jury Reform: Civil and Criminal Proposed Rules*, 27 Colo. Law. 99, 100 (May 1998). As part of a series of reforms intended to provide more information to jurors, C.R.C.P. 47(m) was amended to delete the prohibition against allowing depositions and certain other papers into the jury room during deliberations. The amended rule now states: "Upon retiring, the jurors shall take the jury instructions, their juror notebooks and notes they personally made, if any, and to the extent feasible, those exhibits that have been admitted as evidence."

Consequently, under the present rule, all exhibits that have been admitted as evidence may be taken into the jury room, unless it is infeasible to do so. Thus, the basis no longer exists for prohibiting juror access during deliberations to videotapes, audiotapes, or written documents.

Here, defendant did not contend in the trial court that it would be infeasible or unfairly prejudicial for the jurors to take the wife's written statement into the jury room. Thus, the trial court did not err in ruling consistently with the plain language of C.R.C.P. 47(m).

Because our conclusion rests upon the plain language of amended C.R.C.P. 47(m), we need not consider the numerous out-of-state cases cited to us by the parties on this issue.

We also reject defendant's contention that allowing the written inculpatory statement into the jury room violated defendant's rights to due process and a fair trial. Defendant cites no case, and we have found none, holding that allowing the jury access to a written statement of this nature, which was admitted at trial without objection, and whose admissibility is not challenged on appeal, violates the constitutional right to due process and a fair trial.

## IV. Limitation of Cross–Examination

■ Defendant next contends the trial court violated his right to present a defense and confront the witnesses against him when it refused to allow him to cross-examine his wife about the anticipated length of her prison sentence if she had not pleaded guilty. We disagree.

■ The right to confront and cross-examine witnesses is guaranteed by the Sixth Amendment and by Colo. Const. art. II, § 16. *People v. Montoya*, 942 P.2d 1287, 1293 (Colo.App. 1996)(*Montoya II* ). Although a trial court has discretion to limit cross-examination of a witness, it is constitutional error excessively to limit cross-examination relating to the witness's credibility, such as bias, prejudice, or motive for testifying. *Merritt v. People*, 842 P.2d 162 (Colo.1992).

■ A defendant's right to confrontation is not violated when the trial court excludes evidence regarding the difference between potential penalties for the original crime charged and those for the charge to which the witness pleaded guilty, as long as the jury was informed of the original charges, the charges to which the witness pleaded guilty, and the penalty imposed. In such circumstances, the jury receives adequate facts to draw inferences about the witness's bias and motive. *Montoya II, supra.*

■ An accomplice's guilty plea is admissible to establish an "acknowledgment by the accomplice of participation in the offense," and the trial court "has discretion to limit inquiry into facts underlying the accomplice's conviction." *People v. Auman, supra*, 67 P.3d at 763.

Here, the jury heard evidence that the wife was charged in connection with the thefts, that she pleaded guilty to conspiracy to commit theft, that she expected to receive a sentence of probation, and that she pleaded guilty to "stay out of jail." Defense counsel was allowed to question the wife regarding the plea bargain, including the fact that she pleaded guilty because she feared imprisonment. However, counsel was not allowed to

cross-examine the wife to show that her trial attorney had erroneously advised her that if she were convicted, she faced a mandatory, minimum twenty-year prison sentence and that the prospect of a twenty-year imprisonment prompted her to plead guilty.

Nonetheless, during the defense case, the wife testified that her attorney "finally convinced [her], through several different avenues, that [she] was going to jail" and also told her "it was a crime of violence." Thus, the jury was provided sufficient information to draw inferences about the wife's possible bias and motive for testifying. *See Montoya II, supra. But see State v. Vogleson,* 275 Ga. 637, 571 S.E.2d 752 (2002)(trial court abused its discretion in not allowing defendant to cross-examine prosecution witness about his belief as to amount of prison time he was avoiding by testifying against defendant).

Therefore, we conclude that defendant was not denied his right to effective cross-examination.

### V. Prior Criminal History

Defendant also argues his right to a fair trial was violated when the jury heard evidence of his prior criminal history, consisting of a comment about an alleged criminal act in the 1960s, an allegation that he had "gotten into some things," and a reference to a previous charge for driving under the influence (DUI). We disagree.

A trial court has broad discretion in admitting evidence of other crimes, wrongs, or acts for a proper purpose. *People v. Willner,* 879 P.2d 19 (Colo.1994). Because no objection was made in the trial court to the testimony now challenged on appeal, our review is limited to plain error analysis. *See Wilson v. People, supra.*

While CRE 404(b) excludes evidence of a person's other crimes, wrongs, or acts to establish his or her character for the purpose of showing that the person acted in conformity with that character, such evidence is admissible for other purposes, such as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *People v. Thompson,* 950 P.2d 608, 614 (Colo.App.1997).

A division of this court has held that no plain error occurs when the trial court does not sua sponte conduct a CRE 404(b) analysis of unchallenged evidence. *People v. Thompson, supra.*

Similarly, a division of this court did not find plain error in the trial court's decision not to grant a mistrial when the prosecution elicited testimony from the victim, in apparent violation of a pretrial order, that the defendant had traded places with her during a traffic stop. The division reasoned:

> [T]he prosecution did not focus on any acts or statements of the defendant, but rather established that the victim had lied to protect the defendant. Thus, the emphasis was not on defendant, but on the victim. Further, there was not any testimony about any charges having been filed against defendant in connection with this incident. Accordingly, the fundamental fairness of the trial was not threatened.

*People v. Lafferty,* 9 P.3d 1132, 1136 (Colo. App.1999).

As noted above, the wife's testimony at trial contradicted and recanted her written statement. During cross-examination, the prosecutor asked about her out-of-court statements in which she acknowledged that she had lied to protect defendant in the past. Specifically, the jury heard about a traffic accident in the 1960s where she took the blame and told the police that she was driving when in fact defendant was the driver. This incident was remote in time, occurring approximately forty years earlier, and the wife did not testify that any charges were filed against defendant then. *See People v. Lafferty, supra.*

In addition, the wife stated on cross-examination that defendant owed money to an attorney in connection with the representation of defendant for his third DUI charge. However, there was no express testimony that defendant was convicted of any DUI offense, and the wife specifically testified that he was not convicted of the third DUI charge.

Although the wife also testified that defendant had "gotten into some things," it is

unclear whether this testimony referred to prior bad acts because it was vague and brief. *See People v. Banks*, 983 P.2d 102, 105 (Colo.App.1999), *aff'd*, 9 P.3d 1125 (Colo. 2000).

Accordingly, we conclude that no plain error occurred.

In light of our disposition, we do not address defendant's remaining contentions.

The judgment is reversed with respect to the convictions for theft from an at-risk adult; the judgment is affirmed in all other respects.

Judge ROTHENBERG and Judge WEBB concur.